# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| SAMUEL STONE and | ) | |
| TABITHA STONE | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | **CASE NO.: 5:20-CV-01974-AKK** |
| v. | ) | |
| | ) | |
| FISHHAWK ANDERSON, INC. | ) | |
| and ERIC HOUK | ) | |
| | ) | |
|    Defendants. | ) | |

## DEFENDANT FISHHAWK ANDERSON, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF FISHHAWK'S
## MOTION FOR SUMMARY JUDGMENT

Daniel Patrick Evans
ASB-3209-R67G
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com
Attorney for Defendant
Fishhawk Anderson, Inc.

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS. . . . . . . . . . . . . . 2
      I.    About the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      II.   The September 12, 2019 Incident Between Houk and the Stones . . . 4
      III.  Mr. Stone's Relationships With Fishhawk's Employees and
            Supervisors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      IV.   Mr. Stone's Termination:  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
      V.    There is no evidence of discriminatory or retaliatory animus related to
            the decision to terminate Plaintiff.. . . . . . . . . . . . . . . . . . . . . . . . . 12

V.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
      I.    Mr. Stone Cannot Prove His Race Discrimination Claim  . . . . . . . 13
            A.    Even if Mr. Stone could establish a *prima facie* case
                  of race discrimination, Fishhawk can easily meet its
                  burden to articulate a legitimate nondiscriminatory
                  reason for his termination.. . . . . . . . . . . . . . . . . . . . . . . . . . 16
            B.    Mr. Stone cannot show that Fishhawk's decision was
                  pretextual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            C.    Mr. Stone cannot use a cat's paw theory to defeat
                  summary judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      II.   Mr. Stone has not satisfied judicial prerequisites for a retaliation
            claim and he cannot prove that but for his alleged complaints about
            Mr. Houk regarding the September 12, 2019 fight, he would not have
            been terminated.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
            A.    There is no direct evidence of retaliatory animus. . . . . . . . . 20
            B.    Mr. Stone cannot establish even a *prima facie* case of
                  retaliation because he did not engage in protected activity near
                  the time of his termination. . . . . . . . . . . . . . . . . . . . . . . . . . 21
            C.    There can be no causation where the actual decisionmaker has
                  no knowledge of the protected activity. . . . . . . . . . . . . . . . . 22
            D.    Causation is also negated by the substantial time lapse between
                  Mr. Stone's alleged protected activity and his termination. . . 22

E.     Even if Mr. Stone could establish a *prima facie* case of retaliation, Fishhawk can easily meet its burden to articulate a legitimate, non-retaliatory reason for his termination. . . . . . . 23

F.     Mr. Stone cannot show that Fishhawk's decision was pretextual. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

G.     There is no evidence that Mr. Houk attempted to or actually influenced the decision to terminate Mr. Stone. . . . . . . . . . 24

III.    Fishhawk Is Not Vicariously Liable For Houk's Individual Torts Committed Outside the Line and Scope of Houk's Employment. . . 25

A.     Mr. Stone's Negligence Claim Fails . . . . . . . . . . . . . . . . . . . . 27

B.     Plaintiffs' Battery Claims Against Fishhawk Fail . . . . . . . . . 29

C.     Plaintiffs' Assault Claims Against Fishhawk Fail . . . . . . . . . 30

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## I.    INTRODUCTION

As outlined in Fishhawk's Motion, summary judgment is due to be granted in Fishhawk's favor concerning Plaintiffs' claims against it based on the undisputed material facts, arguments, and legal authority set forth below.

## II.    STANDARD OF REVIEW

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Strickland v. Norfolk Southern Ry.*, 692 F.3d 1151, 1154 (11th Cir. 2012), see also, Rule 56(c), Fed. R. Civ. P.  To defeat summary judgment, plaintiffs must set forth "significant probative evidence tending to support the complaint."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*.  Where the nonmoving party cannot establish the existence "of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must be granted. *Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The Court views the evidence in the light most favorable to the nonmovant, and draws reasonable inferences from undisputed facts in that

1

party's favor. *Blackston v. Shook and Fletcher Insulation Co.*, 764 F.2d 1480, 1482 (11th Cir. 1985).[1] Evidence that is merely colorable cannot defeat a motion for summary judgment. *Anderson*, 477 U.S. 242, 249. Once shown, the burden shifts to the nonmovant to rebut that showing by presenting substantial evidence creating an issue of material fact.[2]

## III.   PROCEDURAL BACKGROUND

On November 12, 2019, Mr. Stone with filed his EEOC discrimination charge against Fishhawk. (Doc. 1-1, pp. 1-2). Plaintiffs filed their complaint against Fishhawk and Fishhawk filed its Amended Answer after obtaining counsel on June 14, 2021. (Docs. 1 & 10). On June 14, 2021, Plaintiffs filed an Amended Complaint drastically changing the underlying facts of the case and Fishhawk filed its Answer and Affirmative Defenses  (Docs. 16& 18).

## IV.   STATEMENT OF UNDISPUTED MATERIAL FACTS[3]

---

[1] A dispute of fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007).

[2] "Substantial evidence" is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *West v. Founders Life Assurance Co. of Florida*, 547 So.2d 870, 871 (Ala. 1989); Ala. Code § 12-21-12.

[3] Depositions are referenced by the identification in Fishhawk's Evidentiary Submission (e.g., "Exh. A"), name of the deponent, and the page:line pinpoint citation based on the pagination of the deposition.  Declarations and Affidavits are referenced by the identification in Defendant's Evidentiary Submission (e.g., "Exh. C"), the affiant's name, and the specific paragraph(s) referenced.

# I.     About the Parties

Fishhawk is an independent delivery contractor for FedEx. (Exh. E, Decl. D. Anderson, P. 1; Exh. F, Decl. L. Anderson, P. 1). From June 2018 until his termination during the first week of November, 2019, Fishhawk employed Mr. Stone, an African-American, as a delivery driver at its Huntsville, Alabama, hub. (Doc. 16, pp. 3, 7; Doc. 18, pp. 3, 6-7). Mr. Stone's duties involved picking up his assigned truck as scheduled and delivering the assigned packages to FedEx customers on Fishhawk's route. (Exh. A, S. Stone depo at 47:7-49:23). Mr. Stone was not a high performing employee and he struggled with his route. (Exh. D, Fishhawk depo 13:10-22; Exh. E, D. Anderson decl pp.6, 9-10). From May 2014-February 2020, Fishhawk employed Mr. Houk, a Caucasian, to work as a delivery driver and driver trainer at its Huntsville, Alabama, hub. (Doc. 16, p. 3; Doc. 18, p. 3; Exh. C. Houk depo at 9:20-22, 67:15-18;  Exhs. E, D. Anderson decl p. 2). Mr.  Houk's duties  involved picking up his  truck on scheduled, delivering the assigned packages to FedEx customers on Fishhawk's route, helping train incoming drivers. (Exh. C. Houk depo at 15:17:8; 50:20-51:3). Mr. Houk was a high performing employee. (Exh. D, Fishhawk depo 13:10-22**;** Exhs. E, D. Anderson decl pp. 2, 9-10). Houk and Mr. Stone since middle school through high school, but they were not in the same class. (Doc. 16, p. 4; Exh. A, S. Stone 173:2-4; Exh. C. Houk 9:17-19, 85:13-17) Once Stone applied to Fishhawk, Houk recommended him for hire and he helped train Mr.

Stone on his route without issue. (Exhs. E D. Anderson decl. p. 10; Exh. F. L. Anderson decl. p. 3). Denadric Stevenson, an African American, managed Mr. Stone's and Mr. Houk's employment. (Exh. A, S. Stone depo at 51:8-9, 175:12-14; Exh. C, Houk depo at 40:20-23; Exhs. E, D. Anderson decl. p. 3; Exh. F, L. Anderson decl. p. 3). Alvante Kirskey, an African American, was Fishhawk's assistant manager during Stone's and Houk's employment. (Exh. A, S. Stone at 51:15-21; Exh. C, Houk at 62:14-18). Fishhawk's operations, policies, and procedures were overseen by Lynette Anderson (Caucasian) its secretary and treasurer, and Doug Anderson (Caucasian), its President. (Exh. D, Fishhawk depo. 26:7-12). Stevenson and Kirskey oversaw Fishhawk's day-to-day operations in Huntsville, but they reported to the Andersons. (Exhs. E, D. Anderson decl. p. 3; Exh. F, L. Anderson decl. p. 3).

Fishhawk maintained an equal employment policy, as well as a policy against discrimination, harassment, and retaliation. (Exh. D, Fishhawk Exh. 6 at pp. 88-90; Exh. E, D. Anderson decl. p. 3). Employees were to report suspected violations of this policy to their manager, the general manager, or the president/secretary of the company. *Id*. Tabitha Stone, formerly known as Tabitha Miller in 2019, has never been employed by Fishhawk. (Exh. J, pp. 2-3). Mr. Stevenson, Mr. Smith, and Mr. Kirksey no longer work for Fishhawk for reasons unrelated to this suit. (Exh. E, D. Anderson decl. pp. 11-21; Exh. F, L. Anderson decl. p. 13).

## II.   The September 12, 2019 Incident Between Houk and the Stones

Mr. Stone plead on September 12, 2019, he witnessed and reported to Fishhawk an unhinged Defendant Houk "under the influence of an illegal substance." (Doc. 1, ¶¶ 14-16). Plaintiffs' claim Defendant Houk had a reputation for being a "drug abuser with a bad temper" and "also had widely-known racist tendencies, and had previously used racial slurs against Plaintiff Samuel Stone while they were both at work." (Doc. 1, ¶¶15, 18). Mr. Stone alleged he was completing a delivery route with Tabitha Miller assisting him. (Doc. 1, ¶19). Suddenly and without warning, Plaintiff was attacked by the apparently drug-fueled racist Houk who screamed racial slurs while violently clawing Sam Stone's face. (Doc. 1, ¶¶20-21). Tabitha Stone then alleges she intervened in the fight but was injured by Houk and she testified that Mr. Houk chest-bumped Mr. Stone. (Doc. 1, ¶22), (Exhibit B, T. Stone depo at pp. 24:3-14, 162:2-5). Mrs. Stone testified that Houk and Stone were so "heated" that she did not know whether either of them actually knew she was intervening. (Exh. B, T. Stone depo at 164: 1-13). In response to this bump, Mr. Stone shoved Houk and choked him to the ground while threatening to kill him. (Exh. A., S. Stone at depo p. 73:1-22, 132:9-21; Exh. B, T. Stone at depo pp. 24:3-14, 162:1-163). *Id*. at Pg. 24, ln. 3-14 and Pg. 162-163, ln. 14-22). Tabitha jumped in and the Stones and Houk started screaming at each other (Exh. B, T. Stone at 164:2). Mr. Houk agrees that he pushed Mr. Stone back after Mr. Stone pushed him and that a melee ensued. (Exh. C, Houk at 34:7-35:19). Houk left and called his supervisor, Mr. Stevenson. *Id.*

Plaintiffs' amended complaint materially changed their original factual allegations. (*compare* Doc. 1, ¶¶ 18-37 to Doc. 16, ¶¶ 18-30, 32-34, 39, 41) Specifically, Defendant Houk's racist history was reduced to using "racial slurs against Plaintiff" while in high school, over 20 years prior. (Doc. 16, ¶18). Plaintiff's random attack changed to Fishhawk instructing him to assist Mr. Houk with an oversized delivery. (Doc. 16, ¶¶20-21). Next, Mrs. Stone was no longer riding in the truck, a violation of company policy, but merely delivering forgotten lunch to Samuel Stone. (Doc. 16, ¶¶25-26; Exh. A, S. Stone depo at 49:12-15; Exh. E at p. 4; Exh. F, p. 5)). Mr. Stone alleged for the first time he suffered "bloody wounds" from the attack. (Doc. 16, ¶28). Mr. Stone alleged his mental health suffered and both Plaintiffs required treatment for unstated injuries. (Doc. 16, ¶¶28-30, 39). Plaintiffs maintained that Eric Houk was the sole aggressor. (Doc. 16, ¶27). On September 12, 2019, Houk and Stone submitted verbal complaints to Denadric Stevenson, but race was never mentioned. (Exh. A, S. Stone depo at 81:21-82:7; Exh. C. Houk depo at 35:16-19, 40:18-23; 41:8-15). Mr. Stevenson reported both complaints and the fight to Lynette Anderson and she told Doug Anderson. (Exh. D, Fishhawk at depo 28:18-22; Exh. E, pp. 4-6; Exh. F, 4-7). As of September 12, 2019, Fishhawk had a policy against fighting during the relevant time and fighting was grounds for termination. (Exh. D, Fishhawk at depo 29:1-13, depo exhibit. 6, p. 85). After investigating, Stone was not terminated or reprimanded. (Exh. A, S. Stone depo at 149:4-15).

Fishhawk learned for the first time during Mr. Stone's deposition that he had choked Houk to the ground while threatening to kill Houk. (Exh. A., S. Stone at depo p. 73:1-22, 132:9-21). Mr. Stevenson investigated and summarized the complaints to Lynette Anderson. (Exh. F, L. Anderson decl. pp.4-7. During the summary, Mrs. Anderson learned for the first time that a non-employee, Tabitha Miller (now Mrs. Stone) was meeting Mr. Stone on his routes without Fishhawk's approval and against FedEx policy. *Id*. at 5. Fishhawk immediately provided a notice to Mr. Stone through Stevenson about its intent to terminate him for such FedEx Policy violations. *Id*. at 19. Mr. Stone admits he knowingly and willingly violated Fishhawk's policy, but he was not terminated at that time. (Exh. A, S. Stone depo at 128:10-13). Mr. Stone testified he had no prior complaints concerning Mr. Houk before September 12, 2019. (Exh. A, S. Stone at depo p. 86:7-15) Mr. Stone only complained about Mr. Houk's alleged racist tendencies after Fishhawk fired Plaintiff.

S. Stone at depo. p. 113:11-15

11    Q. Isn't it true, Mr. Stone, you
12    never complained to Fishhawk about Mr. Houk
13    being racist to you from September 2019 until
14    you were terminated?
15    A.     Correct.

(*see also,* Exh. A, Depo 86: 12-15). While Plaintiff's EEOC charge claims prior use of the "n-word,' Mr. Stone could not specify a time and place of prior utterance when put under oath, but he claims it happened with Houk one time at Fishhawk. (Exh. A.

S.Stone at 166-168;192:19-193:8). In his verified answers, Mr. Stone admits the September 12, 2019 incidence with Houk was the only racist incident he ever had at Fishhawk.(Exh. H, p. 10). Mrs. Stone has no knowledge of Houk using racial slurs. (Exh. B, T. Stone depo 199:4-14) Mr. Stone maintained Mr. Houk was a rampant drug user but testified that he had no evidence of Houk's use illegal drugs or steroids. (Exh. A, S. Stone depo at 118:13-23; 162:6-8 and 165: 3-6).

When asked about damages, Mr. and Mrs. Stone swore under oath they don't know if they have been permanently damaged and they have not provided Fishhawk any computation and/or explanation of damages. (Exh. A, S. Stone at depo 152:5-23,156:15-18; Exh. B, T. Stone depo at pp.32, 180, 182-83; 215:19-22) Exh. H, p. 5; Mrs. Stone asserts Fishhawk is liable for damages because she did not like how they responded after the September 12, 2019 incident, not before. (Exh. B, 52:12-53:1). Mr. and Mrs. Stone confirmed that Mrs. Stone did not seek medical treatment and Defendants do not owe her money for medical treatment. (Exh. A, S Stone depo at pg. 238: 5-22; Exh. B. T. Stone depo 182:18-183:5). Mrs. Stone confirmed that she had not previously alleged any emotional damage. (Exh. B at pg. 212:3-214:23).

Mr. Stone's violent history is well documented. (Exh. A, pp. 128-140 S. Stone depo. exhibit, 5). Mr. Stone is no stranger to threatening to kill his wives and children. (Exh. A, pp. 128-140). Mr. Stone initially testified he was arrested and convicted of domestic violence against his children and former wife Cassandra Stone.

8

(Exh. A, S. Stone Depo 35:13-137:17). Later under oath during the deposition, Mr. Stone lied and said he had never been arrested. (Exh. A, S. Stone Depo 94:17-2013-137:17). Mr. Stone also lied in his verified answers about never being arrested. (*Id* at depo 141:9-20; Exh. H, p. 15, Int. 27). To date, Mr. Stone is currently awaiting trial for second a domestic violence charge against his current wife/victim, Tabitha Stone. (Exh. A, S. Stone Depo 244:7-16). In contrast, Mr. Stone cannot recall a single incident where Houk demonstrated aggressive behavior towards him. (Exh. A, S. Stone depo 244:2-6). Mrs. Stone has a history of deceit and dishonesty, due to her conviction concerning her theft of a controlled substance from a patient under her care as a nursing assistant. (Exh. B, T. Stone at depo 17, 25-27, 160-163)

### III. Mr. Stone's Relationships With Fishhawk's Employees and Supervisors

Mr. Stone mainly dealt with Mr. Stevenson. **(**Exh. A, S. Stone at depo. 61:1-3). Mr. Stevenson and Mr. Kirksey are not trustworthy. (*Id.* at depo. 53:11-18). Before September 12, 2019, Mr. Stone never had any issue with Houk or complained to Fishhawk about him. Mr. Stone claimed Houk "never said nothing to me." (Exh. A, S. Stone at 86:12-15). Mr. Stone testified that he lied to Fishhawk's manager on September 12, 2019 by submitting false allegations that Houk was on steroids. (Exh. A, S. Stone at depo. pp. 161-63. Contradicting his claims, Stone admitted that he no evidence of Mr. Houk using or possessing illegal drugs. *Id.* Fishhawk's employees

are required and subjected to drug tests which Mr. Houk never violated. (Exh. D, Fishhawk at depo. 48:11-18, 50:18-51:19 ; Exh. E, p. 8; Exh. F. pp. 9). No illegal drugs have ever been found on Mr. Houk's person, in his possession, or in a company vehicle while he was Fishhawk's employee. *Id*. Despite his pleadings, Mr. Stone testified he was never afraid of Mr. Houk. (Exh. A , S. Stone depo. p. 192:8-11).

Mr. Stone testified he only complained about Mr. Houk's alleged racist tendencies after Fishhawk fired him. (Exh. A S. Stone at depo. 86:12-15, 113:11-15). Fishhawk never received any complaints about Houk being racist or violent during Mr. Stone's employment and Mr. Stone never told Mr. Anderson that Mr. Houk had used racial slurs. (Exh. E, pp.6-9, 14-16 ; Exh. F, pp. 6-10,16-18, Exh. G, Aff. D. Patrick Evans, pp. 1-6 and the attached recording Fishhawk's Feb. 14, 2022 call with Denadric Stevenson). Neither Stevenson or Kirksey told the Andersons that Mr. Houk had used racial slurs against Mr. Stone. *Id*. Even if Mr. Stone complained to Stevenson about Houk calling him a racial slur, by failing to raise Mr. Stone's complaints against Mr. Houk to the Andersons, Mr. Stevenson did not follow best or desired company practices. (Exh. D, Fishhawk at depo 29: 14-30:5, 88-90; Exh. E, D. Anderson decl. p. 3, ). The first complaint of discrimination Mr. Stone ever made against Fishhawk and/or its employees was after he was terminated and when Mr. Stone's attorney filed an EEOC charge on his behalf. (Doc. 1-1, pp. 1-2; Exh. A, S. Stone at depo. 86:7-15; 113:11-15; 149:4-15). Mr. Stone had not alleged that Mr. or

Mrs. Anderson were racist towards him.

### IV.  Mr. Stone's Termination:

Mr. Stone and Mr. Houk did not have the authority to hire/fire/reprimand Fishhawk's employees. (Exh. A, S. Stone depo at 82:8-83:8).   After September 12, 2019, Mr. Stone was a disgruntled employee who would not follow Mr. Stevenson's direction and he stopped showing up to work on time. (Exh. E, D. Anderson decl pp. 9-16; Exh. F, L Anderson Declaration pp. 10-11,15-18; (Exh. E. D. Anderson Declaration p. 8).   By November 2019, Mr. Stevenson recommended Mr. Stone's termination to the Andersons because Mr. Stone had become a disgruntled employee and an insubordinate employee who failed to show up on time. (Exh. E. D. Anderson Declaration. pp. 9-11; Exh. F, L. Anderson Declaration pp. 9-13).

The decision to terminate employees was ultimately made by the Andersons and they relied on Stevenson's statements in order to make the decisions for the hub. (Exh. D, Fishhawk at depo 30:6-10; 31:9-13).   Fishhawk had no reason to believe Stevenson's statements were untruthful. (Exh. E. D. Anderson Declaration pp.  9-11; Exh. F, L. Anderson Declaration pp. 9-13). Fishhawk discussed retaining Mr. Stone, but decided retaining an insubordinate and disgruntled employee sent the wrong message to other employees.  *Id*.  *(See also* Exh. D, Fishhawk at depo. 30:16-31:8). Fishhawk decided independently to terminate Mr. Stone for insubordination, for his failure to follow company policy, and for attendance violations. *Id*.  Mr. Stevenson

met with Mr. Stone and terminated him the first week of November. (Exh. A, S. Stone at depo. 52:4-9; Exh. D, Fishhawk at depo. 30:13-15). Fishhawk did not provide Mr. Stone reason for his termination and it did not mention anything about prior racially offensive statements, or any motive for retaliation. (Exh. A, S. Stone at depo. 52:4-9). Mr. Houk was never involved in Fishhawk's decision to terminate Mr. Stone. Losing Mr. Stone did not benefit Fishhawk because its other drivers had to absorb Stone's work load.

## V.     There is no evidence of discriminatory or retaliatory animus related to the decision to terminate Plaintiff.

At the time of Plaintiff's termination -- and at all times prior to receiving Plaintiff's EEOC Charge of Discrimination -- Mr. Anderson and Mrs. Anderson were unaware that Mr. Stone had complained to Stevenson as his charge alleges. (Exh. E, D. Anderson decl pp. 9-11; Exh. F, L. Anderson decl. pp. 10-13) The Andersons did not consider or discuss these unknown alleged complaints in the discussion ultimately leading to Mr. Stone's termination. *Id*.

Mr. Stevenson and the Anderson did not discuss or consider Plaintiff's race in the discussion ultimately leading to his termination and that decision by the Andersons. *Id*. The majority of Fishhawk's employees and all of its managers at the Huntsville hub were African-American when Mr. Stone was terminated.(Exhs. E, D. Anderson decl p. 9). Plaintiffs cannot show that white employees were treated more

favorably. In fact, Fishhawk also terminated Houk based on Mr. Stevenson's recommendation. (Exh. E, D. Anderson decl pp. 8-9) Plaintiffs have produced no evidence showing where other employees of Fishhawk have been accused of race discrimination in recent history or that they vicariously caused Houk's intentional tort.

## V.    ARGUMENT

### I.    Mr. Stone Cannot Prove His Race Discrimination Claim

To prove a his Title VII claim, Stone must show by a preponderance of the evidence that Fishhawk intentionally discriminated against him based on race through direct evidence, statistical evidence showing a pattern or practice of discrimination, or circumstantial evidence. *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). Mr. Stone cannot establish his termination was at all related to his race based on direct or statistical evidence of race discrimination. "Direct evidence" is evidence that, if believed, proves the existence of a fact without inference or presumption." *Dixon v. Hallmark Cos., Inc.*, 627 F.3d 849, 854 (11th Cir. 2010). "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Id*.

Racial remarks from non-dicisionmakers like Houk, are not sufficient: "[R]emarks by non-decisionmakers or remarks unrelated to the decision-making process itself are not direct evidence of discrimination." *Standard v. A.B.E.L. Servs.,*

*Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).[4] Mr. Stone's discrimination claim proceeds under the circumstantial, burden shifting *McDonnell-Douglas* test. This test requires Mr. Stone to show, among other things, that he was treated less favorably than others outside of his protected class. *Ashmore v. Sec., Dept. of Transp.*, 503 Fed. Appx. 683, 687 (11th Cir. 2013).

Mr. Stone failed to establish differential treatment here. In fact, Mr. Stone testified that Fishhawk went out of its way to accommodate his attendance needs during the relevant time to seek any medical treatment he needed and it allowed him to be at least two hours  late every Tuesday for personal reasons, (Exh. A, S. Stone at depo. 58:21-59:3). Mr. Stone abused Fishhawk and Mr. Stevenson and Kirksey recommended his termination and Fishhawk had no reason to question his recommendation. (Exh. E, p.11; Exh. F, p. 12; Exh. G, pp. 1-7).

 As of November 2019, Fishhawk had many reasons to terminate Mr. Stone, i.e., his managers' recommendation,  Mr. Stone's unapproved use of non-employees on routes, Mr. Stone's lack of performance, Mr. Stone's failure to report as scheduled. *Id*. Mr. Stone does not deny these reasons. A Fishhawk employee who threatens to harm another employee, whether the threat is manifested verbally or physically, is

---

[4]The evidence must reflect a "discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Damon v. Fleming Supermarkets of Fla., Inc*., 196 F.3d 1354, 1363 (11th Cir. 1999) (citation omitted).

subject to immediate termination without the right of rehire. (Exh. D, pp. 85, 88-92).

Should Mr. Stone argue that he was treated less favorably than Mr. Houk, who had more years more experience at Fishhawk than Stone and additional duties, this fails the test of similarity. To enlist Mr. Houk as a comparator, Stone must show that his and Houk's misconduct are "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1218, 1226 (11th Cir. 2019). Mr. Houk was a lead driver and trainer, Mr. Stone was a driver. (Exh. A S. Stone at 45:2-3; Exh. C, Houk at 13:19-21. Despite Houk's status, Houk was terminated shortly after Mr. Stone's for not following Fishhawk's policy and for insubordination. (Exh. E and F). Mr. Stevenson recommended Houk's termination. *Id*.

To prove a prima facie case of disparate treatment and race discrimination, the Plaintiff may show: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside his protected class. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003). "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects …." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). Under the *McDonnell Douglas* analysis, "a Title VII plaintiff [must] … establish an intent to discriminate on the part of [his] employer." *Batey v. Stone*, 24 F.3d 1330, 1333

(11th Cir. 1994). Mr. Stone is a member of a protected class, but he is unable to prove the remaining elements of disparate treatment and he has alleged no theory of disparate impact, probably because the majority of his fellow Fishhawk co-workers were African-American. Mr. Stone has presented no evidence that Fishhawk filled his position with a person outside his protected class.

A. **Even if Mr. Stone could establish a *prima facie* case of race discrimination, Fishhawk can easily meet its burden to articulate a legitimate nondiscriminatory reason for his termination.**

If Mr. Stone were able to prove a prima facie case of discrimination, the burden would then shift to Fishhawk to articulate a legitimate, nondiscriminatory reason for Mr. Stone's termination. *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (11th Cir. 1997). Fishhawk has done this. It terminated Mr. Stone because his African-American manager requested Stone's termination. Fishhawk assigns each driver a truck and delivery route which is used to deliver FedEx packages to the assigned route each day. When a driver does not show up as scheduled to drive the assigned truck and route, Fishhawk's business suffers. Underperforming employees, like Mr. Stone and Mr. Houk, must be terminated.

B. **Mr. Stone cannot show that Fishhawk's decision was pretextual.**

Thus, the burden shifts back to Mr. Stone to show pretext by showing both that Fishhawk's proffered reason for terminating Mr. Stone is false and that discrimination was the real motivation. *Springer v. Convergys Customer Management Group, Inc.*,

509 F.3d 1344, 1349 (11th Cir. 2007); *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (*citing Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000)). There is no evidence that suggests that Fishhawk's reason for Mr. Stone's termination is untruthful or a cover for race discrimination.

Mr. Stone cannot meet his burden to show pretext merely by quarreling with the wisdom of Fishhawk's decision to terminate him. *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265-66 (11th Cir. 2010). Nor can Mr. Stone show pretext by contending, however implausibly, that his managers of the same protected class lied to the Andersons. (Exh. E, pp. 13-17, Exh. F. 12-19; Exh. G, 1-6). The relevant question is only what Fishhawk, Mrs. Anderson and Mr. Anderson specifically, believed happened to warrant Stone's termination as requested by Stone's managers. *Jefferson v. Burger King Corp.*, 505 Fed. Appx. 830, 834 (11th Cir. 2013) cert. denied, 569 U.S. 980 (2013).

Mr. Stone does not dispute that he violated company policy by eliciting the help of a non-employee to assist him on routes during the complaint period. He has no evidence to counter Fishhawk's reasons for termination. Mr. Stone does not deny that he had violent tendencies or that he made death threats towards Fishhawk's employee. Stone has presented nothing showing that race was considered when African-American supervisor recommended his termination to the Andersons.

**C.** **Mr. Stone cannot use a cat's paw theory to defeat summary**

**judgment.**

Race discrimination claims are evaluated under a proximate cause standard of proof. *Moore v. Delta Airlines, Inc.*, 2020 U.S. Dist. LEXIS 6791, *50 (N.D. Ala.) (Johnson, M.J.). When applied to this lesser burden of proof, the discriminatory animus of a non-decisionmaker may be imputed to the adverse action if the adverse action was not otherwise entirely justified. *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011). However, cat's paw still does not require the decisionmaker to be correct in his or her assessment of the underlying facts, only that he reach the conclusion without the taint of the allegedly-biased contributor. *Anterio v. City of High Springs Fla.*, 762 Fed. Appx. 891, 899-900 (11th Cir. 2019); *Everson v. City of Albany*, 2014 U.S. Dist. LEXIS 138865, *15 (M.D. Ga.) ("Cat's paw theory is only successful where a non-decisionmaker with discriminatory animus has singular influence on the decisionmaker terminating an employee.") Multiple diverse sources agreed that Mr. Stone's termination was warranted because he engaged in multiple types of conduct warranting termination. The existence of multiple witnesses and multiple layers or teams of investigating erodes a cat's paw argument. *See Johnson v. Miles*, supra.; *Johnson v. Gestamp Ala., LLC*, 946 F.Supp.2d 1180, 1199-1200(N.D. Ala. 2013) (Coogler, J.) (where decisionmaker would have reached same conclusion regardless of the input of a single allegedly biased influencer, no basis to find proximate cause); *Harris-Bethea v. Babcock & Wilcox Tech. Servs. Y-12, LLC*, 2016 U.S. Dist. LEXIS

108067, **37-39 (E.D. Tenn.).

II.  **Mr. Stone has not satisfied judicial prerequisites for a retaliation claim and he cannot prove that but for his alleged complaints about Mr. Houk regarding the September 12, 2019 fight, he would not have been terminated.**

Prior to filing a Title VII action for retaliation, one must file an EEOC Charge with sufficient facts to put the employer on notice of the claim. *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460 (5th Cir. 1970). A "judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000). "Discrete acts of discrimination" occurring after the filing of an EEOC charge must be viewed by the EEOC "before such acts may serve as the basis for a finding of discriminatory conduct justifying remedial action by the court." *Ray v. Freeman*, 626 F.2d 439, 443 (5th Cir. 1980). "Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review, are not appropriate." *Id.*

Mr. Stone's complaints (Docs. 1 and 16) allege discrimination and retaliation based on race. However, Mr. Stone admits he never filed a charge against Fishhawk for retaliation, which his counsel drafted on his behalf. (Doc. 1-1, pp. 1-3; Exh. A, S.Stone depo at 147:16-23). Retaliation claims are decided under a but-for causation standard. *Univ. of Tex. Southwester Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).

Such claims may be decided by direct or circumstantial evidence and plead initially in the charge. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Mr. Stone's charge was drafted by counsel, but the judicial pre-requisites for a retaliation under Title VII were not satisfied as the charge only reference discrimination. (Doc. 1-1, pp. 1-2). The complaints' (Docs. 1 and 16) allegations asserting retaliation without more cannot "reasonably be expected to grow out of the charge of discrimination," especially when no notice of retaliation was provided. *See Alexander*, 207 F.3d at 1332. Fishhawk is entitled to summary judgment regarding any claim or incident regarding Mr. Stone's retaliation claim

### A. There is no direct evidence of retaliatory animus.

Direct evidence is evidence that "reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Damon*, 196 F.3d 1354, 1348. Only the most blatant remarks, made by a decisionmaker in conjunction with the adverse decision are direct evidence. *Id.* Mr. Stone's complaints and charges were drafted by his counsel and Mr. Stone testified that such documents are factually incorrect. (Exh. A, pp. 166-19). Summary judgment is warranted here based on the undisputed facts and Plaintiffs' testimony: (1) Mr. Stone stated that he never complained about race discrimination until after he was terminated; (2) Mr. Stone never filed a charge for retaliation; (3) Once Fishhawk learned about the fight, Fishhawk took immediate action to prevent any further fight

by separating Houk and Stone; (4) he was terminated by his African-American supervisor; and (5) nothing was discussed with Mr. Stone when he was terminated by Fishhawk, including race; and (6) Mr. Stone was terminated for cause.

The majority of Fishhawk's employees, during the relevant time were African-American. Mr. Stone does not allege that racial remarks were made by Fishhawk's decisionmakers. Mr. Houk was not a decisionmaker, and remarks by non-decisionmakers are not direct evidence of discrimination or retaliation. *Damon, supra.; Standard v. ABEL Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

**B.      Mr. Stone cannot establish even a *prima facie* case of retaliation because he did not engage in protected activity near the time of his termination.**

Absent of direct evidence, Mr. Stone must proceed under the *McDonnell Douglas* burden shifting framework, which requires him to show that "(1) [he] engaged in a statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is some causal relationship between the two events." *Jaggars v. Florence Nursing & Rehab Ctr.*, LLC, 2017 U.S. Dist. LEXIS 201563, **19-20 (N.D. Ala.) (Johnson, M.J.). There is a lack of a causal connection here: (1) Mr. Stone never complained about race or engage in any protected conduct; (2) the ultimate decisionmakers relied on Mr. Stevenson's recommendations; (3) the temporal distance between his alleged protected complaint and his termination is too remote and not connected.

**C.**     **There can be no causation where the actual decisionmaker has no knowledge of the protected activity.**

The law against retaliation requires " 'actual knowledge, and real intent.'" *Zarza v. Tallahassee Hous. Auth.*, 686 Fed. Appx. 747, 753-54 (11th Cir. 2017) (*quoting Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002)). It is undisputed that Mr. Stone never complained to Fishhawk's managers about Mr. Houk's alleged use of racially offensive language until **AFTER** he was terminated. (Exh. A, S. Stone at depo 113:11-15).    Mr. Stone admission allow supports judgement against him.

**D.**     **Causation is also negated by the substantial time lapse between Mr. Stone's alleged protected activity and his termination.**

At no point before or after September 12, 2019 did Mr. Stone share the same delivery route as Mr. Houk. (Exh. A, S. Stone depo. 181:10-182:6) At no point before or after September 12, 2019 did Mr. Houk share the same delivery route as Mr. Stone. (Exh. A, S. Stone depo. 47:17-48:3). Houk's and Stone cross-complaints on September 12th were effective, and nether subjected the other to further inappropriate situations. (Exh. E, pp. 4-6; Exh. F, pp. 4-7).  Fishhawk's management allowed Houk and Mr. Stone to take time off from work to file opposing police reports against one another. (Exh. E. ¶¶ 29-34; F, ¶¶27-28) Neither were reprimanded for filing reports or complaining. *Id*.  Mr. Stone's only instance of alleged legally-protected expression was the filing of his EEOC charge on November 12, 2019, after he was terminated.

(Doc. 1-1, pp. 1-3).

At least two months elapsed between Mr. Stone's post-fight complaint to Fishhawk before, Mr. Stevenson, recommended his termination.[5] No other complaints, racial or otherwise, were reported by Mr. Stone during this time. Without other evidence of causation, which is absent here, this temporal span is too distant to infer a causal relationship. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) ( a gap of multiple months between protected activity and adverse action severed any possible causal relationship); *see also, Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (same for a multiple month gap).

**E.** **Even if Mr. Stone could establish a *prima facie* case of retaliation, Fishhawk can easily meet its burden to articulate a legitimate, non-retaliatory reason for his termination.**

Even if the Court overlooked these procedural and evidentiary shortcomings and assumed Mr. Stone had established a *prima facie* retaliation case, the burden would shift to Fishhawk to articulate a legitimate, non-retaliatory reason for terminating Mr. Stone. *McCann v. Tillman*, 526 F.3d 1370, 1375 (11th Cir. 2008). The record shows Fishhawk made its independent decision to terminate Mr. Stone without regard to race and based on recommendations from his supervisors.

---

[5]Following the September 12, 2019 event, Plaintiffs have presented no evidence of other incidents involving during Mr. Stone's and Houk's employment. *See Wilson v. Potter*, 2009 U.S. Dist. LEXIS 44118, *31 (S.D. Ohio)(intervening positive action between protected complaint and adverse action undercut causal connection).

**F.    Mr. Stone cannot show that Fishhawk's decision was pretextual.**

The burden thus shifts back to Mr. Stone to show that Fishhawk's reason for his termination was pretextual by "meet[ing] the reason head on and rebut[ting] it." *Wilson v. Bellsouth Telecommunications, Inc.*, 386 Fed. Appx. 971, 972 (11th Cir. 2010). Mr. Stone has not satisfied this burden by demonstrating by a preponderance of the evidence the existence of "'such weaknesses, implausibilities, inconsistencies, incoherenices, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could find them unworthy of credence.'" *Gant v. Kash'n'Karry Food Stores, Inc.*, 390 Fed. Appx. 943, 045-46 (11th Cir. 2010) (*quoting Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1528 (11th Cir. 1997)). Stone cannot provided any evidence showing where a white comparator was treated more fairly under similar circumstances. Mr. Stone has not presented any direct or circumstantial evidence showing that Stevenson or Fishhawk possessed a retaliatory and/or discriminatory animus against him.

**G.    There is no evidence that Mr. Houk attempted to or actually influenced the decision to terminate Mr. Stone.**

Houk never played a role in Stone's termination and he did not have the ability to hire or fire employees on Fishhawk's behalf. Mr. Houk had no managerial or supervisory authority as Fishhawk's employee. Fishhawk never consulted with Houk in deciding to terminate Mr. Stone. (Exh. E, D. Anderson decl p. 11; Exh. F, L.

Anderson decl p. 12). *See Johnson v. Miles*, 2011 U.S. Dist. LEXIS 99578, *15 (E.D. Ky.) (multiple complainants makes it improbable that a single bad-acting supervisor could have an ultimate influence)[6].

Mr. Stone may attempt to assert a cat's paw theory of retaliation to circumvent the outcome Stevenson's, Kirksey's, and the Andersons' inability to form retaliatory animus against him. Stone must prove cat's paw theory of retaliation by showing "a subordinate supervisor (1) performs an act motivated by the proscribed animus that is intended to cause an adverse employment action and (2) that act is 'a "but-for" cause of, or a determinative influence on,' the ultimate employment decision." *Moore v. Delta Airlines, Inc.*, 2020 U.S. Dist. LEXIS 6791, *50 (N.D. Ala.) (Johnson, M.J.) (*quoting Sims v. MVM, Inc.*, 704 F.3d 1327, 1335 (11th Cir. 2013)). In this case, both elements are absent.

### III.    Fishhawk Is Not Vicariously Liable For Houk's Individual Torts Committed Outside the Line and Scope of Houk's Employment

Plaintiffs' intentional tort and negligence claims fail because there is no evidence showing directly, or by reasonable inference, that the tortious conduct of the employee was committed while performing duties assigned to him, but the evidence does show the Court that Houk was acting for personal benefit. *Hester v. Brown*, 512

---

[6]See *Rudy v. Walter Coke, Inc.*, 21 F.Supp.3d 1228, 1241 (N.D. Ala. 2014) (Ott, M.J.), aff'd, 613 Fed. Appx. 828, 831 (11th Cir.); *Brakeman v. BBVA Compass*, 2018 U.S. Dist. LEXIS 112262, *68 (N.D. Ala.) (Ott, M.J.).

F.Supp.2d 1228, 1234 (2007).

Where an employee is not liable for battery or assault, the employer cannot be liable under the theory of respondeat superior. *Hester v. Brown*, 512 F.Supp.2d 1228,1235 (2007). Fishhawk's liability of Houk's tortious acts as alleged hinges on the theory of respondeat superior which cannot be proven here. "To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of employer and employee-master and servant- and to establish that the act was done within the scope of the employee's employment." *Hendley v. Springhill Mem'l Hosp.*, 575 So.2d 547, 550 (Ala.1990). Houk was not acting in the line and scope of his employment during the fight. Plaintiffs cannot establish the agency needed to impute liability on Fishhawk because they have failed to present evidence showing Fishhawk had knowledge an event between Houk and the Stones would occur. To recover under the theory of respondeat superior here, Plaintiffs must prove Houk's actions were done within the scope of his employment and not for his benefit. *Hester v. Brown*, 512 F.Supp.2d 1228, 1238 (M.D. Ala. 2007).

The parties do not dispute that fighting, assaulting, and battering people was not in the line and scope of Houk's or Stone's employment. Additionally, Houk and Stone were never decisionmakers or agents for Fishhawk. The September 12, 2019 occurrence happened solely because of Houk and the Stones and it served no purpose for Fishhawk. Once Fishhawk was on notice after the September 12th fight, it took all

reasonable steps to prevent future altercations and none were had. Plaintiffs testified that they are not seeking damages for medical bills because they did not seek treatment, but they claim they entitled to emotional distress damages for outrage without providing any evidence and/or quantifying what those damages are. Plaintiffs' negligence and intentional tort claims against Fishhawk fail because tortious acts of an employee cannot be imputed to the employer except in very compelling circumstances. "The tort of outrage provides a remedy for 'extreme and outrageous conduct,' *American Road Service Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980), and so should not be the basis for vicarious or respondeat superior liability except in the most compelling circumstances." *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 327 (Ala. 1989) (emphasis in original).

For vicarious liability to attach Plaintiff must establish that the employee was an (1) agent; (2) the agent's wrongful acts were "in the line and scope of his employment" or "in furtherance of the business"; and (3) the company "participated in, authorized, or ratified the wrongful acts" of the employee. *Joyner v. AAA Cooper Transportation*, 477 So. 2d 364, 365 (Ala. 1985). Plaintiffs cannot meet this burden

Houk's and Stone's fight was personal in nature and it was not in carrying out the duties of a Fishhawk's delivery driver. *See Green v. Mobis Ala., LLC*, 995 F. Supp. 2d 1285, 1310 (M.D. Ala. 2014) (harassing behavior on the job is "entirely personal in nature and not within his assigned duties"). Once Fishhawk received

notice, it investigated both complaints and took immediate action. Plaintiff's cannot establish as a matter of law that Fishhawk either ratified or participated in Houk's actions, warranting dismissal of Plaintiffs' assault and battery claims.

## A. Mr. Stone's Negligence Claim Fails:

The elements of Stone's common law negligence claim are a duty, a breach of that duty, causation, and damage. *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So.2d 665, 679 (Ala.2001). Under Alabama law, the existence of a duty is a legal question to be determined by the court. *S. Ala. Brick Co. v. Carwie*, 214 So. 3d 1169, 1175 (Ala. 2016) (citing *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 837 (Ala. 2003)). Plaintiffs cannot establish Fishhawk's duty to protect its employees from unknown and unforeseeable dangers committed by a non-managerial employee outside the scope of employment. Per Stone's testimony, Fishhawk had no reason to know about Houk's violent tendency until after the September 12, 2019 event. From June 2018 until the September 12th event, Houk and Stone worked together without issue. Should Plaintiffs attempt to now argue negligent supervision without actually pleading it, Fishhawk's liability depends solely upon Plaintiffs establishing by affirmative proof that the incompetency of Houk was actually known by Fishhawk. *Hester v. Brown*, 512 F.Supp.2d 1228,1238 (M.D. Ala. 2007). A blanket assertion is

not sufficient. *Id* [7] Mr. Stone's negligence claim also fails because he willingly and knowingly subjected himself to the harm which created his alleged damages. Even if Stone satisfied the elements for the prima facie case, he himself was contributorily negligent and is barred from recovering. Mr. Stone's engagement with Houk discharged any potential duty Fishhawk may have owed.

### B.    Plaintiffs' Battery Claims Against Fishhawk Fail:

According to Plaintiffs, Houk was the sole aggressor concerning the September 12, 2019 fight. All parties agree Stone's and Houk's actions were outside the line and scope of their employment and the actions were not approved or ratified by Fishhawk. A "battery consists in an injury actually done to the person of another in an angry or revengeful or rude or insolent manner.... The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done.... Thus, to lay hands on another in a hostile manner is a battery....' " *Surrency v. Harbison*, 489 So.2d 1097, 1104 (Ala.1986). Plaintiffs assumed the risk of injury when they assaulted Mr. Houk and

---

[7]"It is settled law in Alabama that even if one negligently creates a dangerous condition, he or she is not responsible for injury that results from the intervention of another cause, if at the time of the original negligence, the intervening cause cannot reasonably be foreseen." *Sims v. Crates*, 789 So.2d 220, 224 (Ala.2000) (*Gilmore v. Shell Oil Co.*, 613 So.2d 1272 (Ala.1993)). "In such cases, we have held that the defendant's negligence is not the 'proximate cause' of the plaintiff's injury, and, therefore, that the defendant is not liable." *Prill v. Marrone*, 23 So.3d 1 (2009). The Stone's admission of battering and assaulting Houk is an intervening cause which directly resulted in their damages, if any."In order for conduct to be considered an intervening efficient cause, it must (1) occur after the defendant's negligent act, (2) be unforeseeable to the defendant at the time he acts, and (3) be sufficient to be the sole cause in fact of the plaintiff's injury." *Gilmore* at 1275.

threatened to take his life. The damages Plaintiffs sustained have never been quantified by Plaintiffs. Fishhawk incorporates herein Mr. Houk's defense of Mrs. Stone's battery claims set forth in his Brief in Support of Summary Judgment. Mrs. Stone admits Mr. Houk was not even aware she was intervening in the fight. All parties agree that battering another is outside the line and scope of Houk's/Stone's employment. Fishhawk is not vicariously liable for the non-managerial employee's action against either Plaintiff which the record shows was made outside the line and scope of Houk's employment.

### C. Plaintiffs' Assault Claims Against Fishhawk Fail:

Fishhawk is not liable for Houk's alleged intentional assault against Plaintiff's made outside the scope of his employment. "An assault is an attempt, or offer, to do another person violence, without actually accomplishing it. A menace is not an assault; neither is a conditional offer of violence. There must be a present intention to strike. *Stoutmire v. State*, 358 So.2d 508, 513 (Ala. Crim. App. 1978). Likewise, Mr. Houk did not attempt to assault Tabitha, but she interjected herself into the fight for Mr. Stone's benefit, knowing the danger. Fishhawk is not liable to either plaintiff.

### CONCLUSION

For the reasons set fort above, Fishhawk is entitled to summary judgment against Plaintiffs on all counts.

RESPECTFULLY SUBMITTED,

s/ Daniel Patrick Evans
Daniel Patrick Evans
ASB-3209-R67G
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone: (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com
**Attorney for Defendant**
**Fishhawk Anderson, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of March, 2022, I have electronically filed the foregoing Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will provide notice to the following:

***Attorneys for Plaintiffs***
Eric J. Artrip, Esq.
Mastando & Artrip, LLC
301 Washington Street, Suite 302
Huntsville, Alabama 35801
artrip@mastandopartrip.com
teri@mastandoartrip.com

***Attorneys for Defendant Eric Houk***
Jeremiah M. Hodges
Timothy M. McFalls
Hodges Trial Lawyers, P.C.
320 Clinton Avenue East
Huntsville, Alabama 35801
jmhodges@notanaccident.com
tmmcfalls@notanacccident.com

s/ Daniel Patrick Evans
Daniel Patrick Evans