FILED

2022 Jun-14  PM 03:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL STONE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:20-cv-01974-AKK** |
| **FISHHAWK ANDERSON INC., et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

This matter stems from a single workplace altercation and the resulting allegedly disparate treatment of the two combatants.  But in an indictment of the parties and their lawyers, an otherwise-straightforward dispute has ballooned into a contentious litigation chock-full of vitriolic rhetoric, unsupported accusations of fraud, and far more motions than warranted.  As a result, and to properly dispose of the no-fewer-than ten pending motions, this opinion is quite lengthy.

Here is the abridged version: Samuel Stone alleges that his former colleague attacked him at work, and he brings (1) various state-law tort claims against both this coworker and his former employer,[1] and (2) Title VII claims against his employer.  *See* doc. 16.  For the reasons outlined below, summary judgment is due

---

[1] Stone's wife, Tabitha, also alleges that she was injured during this attack and joins Stone's assault and battery claims.  *See* doc. 16.

on Stone's Title VII claims because he has failed to produce evidence that would allow a reasonable jury to find that his employer discriminated against or harassed him on the basis of race or retaliated against him for engaging in a protected activity. And because the only remaining claims arise under state law, the court will decline to exercise supplemental jurisdiction over those claims and will dismiss them without prejudice.

## I.

Fishhawk Anderson is an independent delivery contractor that employed Samuel Stone and Eric Houk as drivers at its delivery hub in Huntsville, Alabama. Docs. 16 at 3; 38-5 at 1-2.  On September 12, 2019, Fishhawk scheduled Houk to deliver an oversized package to a delivery customer.  Docs. 38-1 at 47-48; 38-3 at 7-9.  The package proved too large to fit on Houk's truck, prompting a supervisor to ask Stone to make the delivery instead.  *Id*.  The supervisor also instructed Stone to help Houk finish his deliveries once Stone completed his own route.  *Id*.

Just before delivering the oversize package, Stone called Houk to arrange a meeting to help Houk unload his remaining packages as instructed.  Docs. 38-1 at 17-20; 38-3 at 8-9.  Houk answered curtly before hanging up to complete a delivery, and when he tried to call Stone back, Stone did not pick up.  *Id*.  Houk, apparently annoyed by this, decided to go meet Stone at the oversize-package customer's house

as Stone was completing the delivery.  *Id*.  The two men began shouting at one another, and the situation escalated.  *Id*.

According to Stone, who is African American, Houk chest bumped him and hurled racist slurs at him before scratching Stone's face.  *See* docs. 38-1 at 19-20, 56-58; 38-2 at 7-8.[2]  Stone, in turn, choked Houk and pinned him against Houk's truck.  *Id*.  At some point, Houk allegedly choked Tabitha Stone, who was also at the residence purportedly to assist Stone, and shoved her into the windshield of her car. *Id*.

To no surprise, Houk has a different version of events.  In Houk's telling, after the men bumped chests, Stone swept Houk's legs out from under him and rammed Houk into the front of Stone's delivery truck before the two men started wrestling in the driveway.  *See* doc. 38-3 at 9-11.  Houk and Stone agree that once the delivery customer came outside and pleaded with them to stop fighting, Houk left the scene.  *Id*.; doc. 38-1 at 57.  Both men immediately called their supervisor to report the fight.  Docs. 38-1 at 45; 38-3 at 10.

Paramedics arrived and treated Stone's injuries, and Stone reported the attack to police.  Doc. 38-1 at 58-60.  The following day, Stone went to the Madison County magistrate's office to fill out an arrest warrant for Houk.  *Id*.  Houk arrived moments

---

[2] Stone alleges that Houk had a history of using racist language towards him while the two were in high school, but he acknowledges that Houk did not use such slurs towards Stone at any other time during their employment with Fishhawk.  *See* doc. 38-1 at 43-45.

later to file his own police report against Stone.  *Id*.; doc. 38-3 at 16-17.  And, of course, the two argued again before completing their respective forms and leaving. *Id*.

Shortly thereafter, Stone claims that Fishhawk threatened to discharge him if he did not drop his charges against Houk, and Stone eventually complied.  Doc. 38-1 at 33, 60.[3]  Stone also pleads that despite Houk's allegedly racist attack, Fishhawk "continued to place [] Stone and [Houk] in close proximity while at work," doc. 16 at 7, although he later testified that Fishhawk moved Stone farther away from Houk at work because "[t]hey didn't want [Stone] near him," doc. 38-1 at 46-47.

Around two months after the altercation, Fishhawk discharged Stone, purportedly for poor performance and insubordination.  *Id*. at 37-39; docs. 38-4 at 9; 38-5 at 9-11.  Stone claims that his discharge was racially motivated, noting that Fishhawk retained Houk, who is white.  Doc. 38-1 at 37-38.  Stone subsequently filed a charge with the Equal Employment Opportunity Commission alleging race discrimination.  Doc. 1-1 at 2-3.  He and Tabitha Stone then filed the instant suit. Doc. 1.

In their amended complaint, doc. 16, the Stones plead the following claims: (1) assault and battery claims against Houk and Fishhawk; (2) a negligence claim

---

[3] Houk, for his part, claims that Stone called him to reconcile and that the two mutually agreed not to pursue the matter any further.  Doc. 38-3 at 18.

against Fishhawk; and (3) Title VII racial discrimination, retaliation, and hostile work environment claims against Fishhawk, *id*. at 7-12.

## II.

This dispute, however, has extended far beyond these facts and has spilled over from the workplace into dueling accusations of alleged misconduct related to the parties' handling of this lawsuit.

## A.

Just prior to the dispositive motions deadline, the plaintiffs filed a "motion for sanctions and no contact." *See* doc. 31.  In it, Tabitha Stone claims that Houk messaged her during Samuel Stone's deposition, in violation of counsel's instructions, and then accosted her in the parking lot of her daughter's softball practice and pressured her to recant her deposition testimony about Houk's attack. *See* doc. 31-1.  Given that Houk "is clearly ignoring his counsel's advice and counsel in attempting to tamper with witness testimony," the plaintiffs argue, the court should order Houk to "cease and desist all contact with Mrs. Stone during the pendency of this lawsuit" and award plaintiffs' counsel attorneys' fees incurred in filing their motion.  *See* doc. 31.

Houk, in response, claims that it was Tabitha Stone who approached *him* at *his* son's baseball practice.  *See* doc. 33-1. As Houk tells it: "Mrs. Stone called my name to get my attention.  I was shocked.  At first, I continued walking.  Then she

called my name again and I stopped and asked her what was up." *Id.* Tabitha Stone purportedly informed Houk that she planned to recant her testimony about Houk's alleged attack because it "was not true," and she supposedly shared several other personal details with Houk and apologized to Houk for her role in this case. *Id.* Tabitha Stone was "extremely distraught" throughout this encounter, and the two "parted ways with [Houk] accepting [Stone's] apology and her giving [Houk] a hug." *Id.* The next day, Houk sent a message to Tabitha Stone following up on their conversation in which he expressed sympathy for her situation and his appreciation for her alleged willingness to recant. *Id.*[4]

Despite Houk's apparent magnanimity in his interaction with Tabitha Stone and in his follow-up message, in light of the plaintiffs' motion,  "Houk has no objection to this [c]ourt entering a mutual 'no contact'[o]rder . . . [because] [g]iven the salacious allegations in this matter, [] Houk has no desire to ever see or speak to either of these [p]laintiffs again." *See* doc. 33.  But Houk objects to the request for sanctions, ably noting that Tabitha Stone's and Houk's affidavits "are so incompatible that there is not room for misinterpretation of the actual conversation and someone is being untruthful," and he asks the court to "schedule an evidentiary hearing and/or in camera proceeding to address the allegations made by both sides." *Id.*

---

[4] Houk does not dispute that this message was improper. *See* doc. 33 at 2.

As an initial matter, the court discerns – and the parties have supplied – no legal basis for entering a "no contact" order in a civil matter in federal court. Though no contact orders are occasionally entered in federal criminal proceedings, *see, e.g., United States v. Henderson*, 541 F. Supp. 3d 1312 (M.D. Ala. 2021), there appears to be no precedent for entering such an order in a civil case, particularly one which, based on the complaint, does not involve allegations of harassment or domestic violence. As one scholar has noted, the state-law civil harassment statues that undergird almost all no contact orders entered in state court are encountered by "none of the federal judiciary." Aaron H. Caplan, *Free Speech and Civil Harassment Orders*, 64 Hastings L.J. 781, 786 (2013). Since Houk and the Stones apparently agree that they should not have any contact with each other, the court will not wade into these uncharted waters. And given that Tabitha Stone's and Houk's dueling affidavits are devoid of information relevant to the pending summary judgment motions – and instead supply inflammatory allegations that are designed, in the court's view, to paint the other party negatively in hopes of prejudicing the court's view of that party – the court will not consider the affidavits in its ruling and will deny the plaintiffs' motion for no contact and for sanctions, doc. 31.[5]

---

[5] Houk's request for oral argument on the motion for sanctions, doc. 34, is also due to be denied as moot.

**B.**

Unfortunately, there is more extraneous madness.  Concurrent with its motion for summary judgment, *see* doc. 37, Fishhawk also moved for sanctions and for attorneys' fees and costs, *see* docs. 35, 36.  Based on its contention that the allegations in the complaint are entirely contradicted by the plaintiffs' testimony, Fishhawk argues that plaintiffs' counsel violated Federal Rule of Civil Procedure 11 by filing a frivolous complaint and prosecuting this action. *See* doc. 35.  Fishhawk further contends that counsel pursued this matter for the improper purpose of harassing the defendants and coercing a settlement, and it asks the court to impose sanctions against the plaintiffs and their counsel by dismissing the complaint and awarding attorneys' fees and costs to Fishhawk. *See id.*; doc. 36.

**1.**

Sanctions are only warranted under Rule 11 when: "(1) [] a party files a pleading that has no reasonable factual basis; (2) [] the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) [] the party files a pleading in bad faith for an improper purpose." *Massengale v. Ray*, 267 F.3d 1298, 1301 (11th Cir. 2001) (internal citations omitted).  These sanctions exist to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers," so in considering a motion for sanctions under Rule 11, the court must determine

"whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified."  *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (internal citation omitted).  Because "Rule 11 is intended to deter claims with *no* factual or legal basis at all," sanctions are not warranted where the evidence and legal authority underpinning a plaintiffs' claims are "merely weak." *Davis v. Carl*, 906 F.2d 533, 535-38 (11th Cir. 1990) (emphasis in original).

**2.**

Based on the record before the court, Fishhawk's motion is the pleading that borders on frivolity.  There is no evidence to show that plaintiffs' counsel engaged in the sort of frivolous and detached-from-reality conduct contemplated by Rule 11. For one, that the plaintiffs' deposition testimony differed slightly from their initial pleadings does not render counsel's filing of the initial and amended complaints – or continued prosecution of this action – sanctionable.  Lawyers file initial pleadings based on the information their clients provide to them.  Discovery is designed in part to elucidate and sharpen the parties' factual allegations and defenses, and depositions in particular test the parties' dueling accounts of the facts through the crucible of cross-examination.

It is thus unsurprising that the Stones' deposition testimony, most of which was elicited by defense counsel's often-vituperative examination, differed in some ways from the facts pleaded in the complaint, which counsel drafted based on the

information counsel had at that point.  And although Fishhawk claims that these discrepancies expose egregious misrepresentations in the operative complaint, *see* doc. 35 at 18-28, the court sees matters differently.  That Samuel Stone was not intimately familiar with the contents of counsel's filings on his behalf, for example, does not demand a finding that his counsel violated of Rule 11.  And that the complaint failed to include certain facts that are purportedly damaging to the plaintiffs' case is also not sanctionable; after all, it is defense counsel's job to unearth these additional facts in discovery and use them to poke holes in the plaintiffs' case.

But furthermore, as outlined in greater detail below, *see generally* Section IV, Stone's Title VII claims are at least colorable, and a reasonable attorney pursuing this case certainly could have believed that these claims were legally and factually justified.  *See Kaplan*, 331 F.3d at 1255; *cf. Thomas v. Early Cnty., GA*, 360 F. App'x 71, 75 (11th Cir. 2010) (holding that Rule 11 sanctions were warranted "because Plaintiffs' complaints had no colorable basis in law or fact and Plaintiffs' attorney should have known that").  The court is therefore unmoved by Fishhawk's plea for Rule 11 sanctions and for attorneys' fees and costs, and the corresponding motions, docs. 35, 36, are due to be denied.[6]

---

[6] The plaintiffs also moved to strike Fishhawk's motions for sanctions and fees or, in the alternative, for leave to file excess pages in response.  Doc. 42.  Fishhawk did not oppose the request for excess pages, *see* doc. 43, but the plaintiffs filed their response – which included arguments via attached exhibits that far exceeded the court's page limits – before the court ruled on the motion to exceed, *see* doc. 44.  Regardless, however, since the court will deny Fishhawk's

## C.

The motions continue.  In response to Fishhawk's motion for sanctions, the plaintiffs filed five affidavits intended to bolster the factual allegations in their complaint and thus rebut Fishhawk's claims of frivolity.  *See* doc. 44 at 10-27.  These affidavits are from Samuel Stone, Gail Wynette, the Fishhawk delivery customer at whose house Houk allegedly attacked Stone, and Alvintae Kirksey, Denadric Stevenson, and Joshua Smith, all former Fishhawk employees who supervised Stone.  *Id*.

Fishhawk, in turn, moved to strike the affidavits, arguing that: (1) Stone's affidavit is an improper sham affidavit that contradicts his prior testimony; (2) the supervisors' affidavits are comprised of hearsay, were not produced during discovery, and were obtained in violation of ethics rules; and (3) the plaintiffs only disclosed Wynette as a potential witness after the close of discovery and thus cannot rely on her testimony.  *See* doc. 46.  The court addresses these contentions in reverse order, but except for the portion of Stone's affidavit related to his purported complaints about Houk's use of racial slurs, which the court will address in Sections IV.B and C, *infra*, the motion to strike has no merit and is yet another example of the unnecessary vitriol in this case.

---

motions for sanctions and attorneys' fees, the plaintiffs' motion to strike and/or file excess pages is moot.

**1.**

Rule 26 requires parties to submit initial disclosures at the outset of discovery listing "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a).  A party must also promptly supplement or correct its disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Relevant here, the court directed the parties to complete their initial disclosures by April 12, 2021, and to supplement these disclosures, if necessary, no later than December 19, 2021.  Doc. 13 at 2-3.  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c).

**a.**

Fishhawk maintains that the plaintiffs only identified Wynette as a witness nearly two months after the court's deadline for supplementation.  Doc. 46 at 9-10.  The plaintiffs assert that they identified Wynette just before this deadline in response to Houk's interrogatories, doc. 47 at 9-10, but Fishhawk notes that it never received

those responses, docs. 48 at 5; 48-1.  Since the plaintiffs did not properly disclose Wynette's identity to Fishhawk, the pertinent question is whether it had "been made known to [Fishhawk] during the discovery process or in writing" that Wynette might possess discoverable information relevant to the plaintiffs' claims, thereby obviating supplementation.  *See* Fed. R. Civ. P. 26(e).  On this issue, courts within the Eleventh Circuit focus "on whether the moving party is aware that the affiant is an individual with discoverable information."  *Ojeda-Sanchez v. Bland Farms, LLC*, No. 6:08-CV-096, 2010 WL 2382452, at *1 (S.D. Ga. June 14, 2010); *see also Griffin v. Biomat USA, Inc.*, No. 1:19-CV-604-ECM, 2022 WL 424964, at *6 (M.D. Ala. Feb. 10, 2022) (citing *Ojeda-Sanchez* approvingly for its collection of cases).

### b.

Fishhawk cannot plausibly claim surprise that Wynette had discoverable information.  Wynette was a Fishhawk customer, and Houk's alleged attack of the Stones occurred during a delivery to Wynette.  In fact, the plaintiffs plead in their complaint that Wynette was personally involved in the aftermath of the attack, claiming that "the owner of the residence to which the delivery was being made emerged and stated that they had called the police" and then "tended to [the Stones'] wounds as they awaited the arrival of the police."  Doc. 16 at 5.  Although the plaintiffs did not explicitly identify Wynette in their initial disclosures or in the complaint, Fishhawk presumably could have ascertained her identity through a

search of its delivery records and customer database. And, given the plaintiffs' allegations, it seems obvious to the court that Wynette would have highly relevant information to share about the altercation and that Fishhawk should have had her high on its list of persons to contact either when it first received dueling reports about the altercation or after it received notice of this lawsuit. Given that it is obvious that Fishhawk was "aware that the [Wynette] is an individual with discoverable information," *Ojeda-Sanchez*, 2010 WL 2382452, at *1, Fishhawk's motion to strike her affidavit is due to be denied.[7]

### 2.

Fishhawk also moves to strike the affidavits of Stone's former supervisors. Fishhawk contends that: (a) significant portions of these affidavits contain inadmissible hearsay or are not based on personal knowledge; (b) the affidavits were improperly obtained after the close of discovery; and (c) plaintiffs' counsel violated the Alabama Rules of Professional Conduct by contacting the former supervisors without Fishhawk's consent. *See* doc. 46 at 1-5, 8-9.

---

[7] Fishhawk also argues that Wynette's affidavit "cannot be reduced to an admissible form" because Wynette "makes conclusory assertions, without stating the extent of her personal knowledge," and it notes that "cross-examination would have been useful." Docs. 46 at 10; 48 at 5. Fishhawk does not identify which parts of Wynette's affidavit offend the Federal Rules of Evidence, and the court's review reveals no statements that are obviously inadmissible on either hearsay or lack-of-personal-knowledge grounds. And while the court certainly agrees that cross-examination might have been useful, Fishhawk was free to depose Wynette or to obtain its own statement from her had it wished. Thus, to the extent Fishhawk seeks exclusion of Wynette's affidavit on these additional bases, this request is due to be denied as well.

**a.**

At summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).  Rule 56 does provide litigants some leeway at this stage, however, and in ruling on summary judgment motions, a district court may consider otherwise inadmissible evidence if it "could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (internal citation omitted).  Importantly, a "district court has broad discretion in determining the admissibility of evidence." *Hetherington v. Wal-Mart, Inc.*, 511 F. App'x 909, 911 (11th Cir. 2013) (citing *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th Cir. 2009)).

Fishhawk claims that almost all of the statements in the three supervisors' affidavits "are offered for the truth of the matter asserted and [] constitute hearsay without an exception."  Doc. 46 at 8-9.  Here are some examples of statements that purportedly fall under this umbrella: "I also knew Eric Houk. On the day the fight happened, both Mr. Houck (sic) and Mr. Stone called me to tell me about the fight;" "I had no problem with Sam Stone's girlfriend following him on his route to help him find where he needed to be;" "I was present when Mr. Houk lost his temper and kicked a trash can in front of Mrs. Anderson;" and "I supervised Sam Stone." *See*

doc. 46 at 8-9 (citing doc. 44-2 at 10-19).  Fishhawk does little to substantiate its claims that these statements are hearsay, and to the court's eye, in each of these examples, the affiant has the requisite personal knowledge and does not implicate the rule against hearsay by relaying a declarant's out-of-court statement.  *See* Fed. R. Evid. 801(c).

Fishhawk also objects to several statements outlining what Houk said to his Fishhawk supervisors both during the general course of his employment and in the aftermath of his altercation with Stone, such as "[Houk] told me [Stone] had pushed him first," and "Houk had obvious temper issues and told me he took steroids on a regular basis."  *See* doc. 46 at 8-9 (citing doc. 44-2 at 10-19).  The plaintiffs contend that these statements are non-hearsay opposing party statements under Rule 801(d)(2)(D) because they were made by Houk – a Fishhawk employee – on a matter within the scope of his employment relationship with Fishhawk while it existed.  *See* doc. 47 at 7-9.  Fishhawk, disagrees, claiming that to constitute a non-hearsay statement by a party opponent, the supervisor affiants "would have had to be speaking as Fishhawk and none had the authority to do so on the dates they executed the affidavits."  Doc. 48 at 4 (citing Fed. R. Evid. 80(d)(2) (sic)).

Rule 801(d)(2) lists a variety of situations where a declarant's out-of-court statement is not hearsay and can be used against an opposing party, and these situations focus on the relationship between the declarant – the person who made the

underlying statement that the witness is relaying – and the defendant. Here, Houk is the declarant and a defendant, so it is his relationship with Fishhawk that is relevant for Rule 801(d)(2) purposes. That the supervisors were not employed by Fishhawk at the time they prepared the affidavits or were not authorized to speak on the issue is thus not germane to the hearsay analysis.

The remainder of Fishhawk's admissibility-related arguments for striking the supervisors' affidavits are similarly underdeveloped and unpersuasive. And given Fishhawk's scattershot approach here, the court is disinclined to continue with a line-by-line analysis of the affidavits. In short, while ruling on the summary judgment motions, the court, as always, will not consider evidence that falls outside the evidentiary confines of Rule 56(c), including statements that are not based on personal knowledge or cannot be distilled to an admissible form. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999). But the burden is on the movant to identify individual statements within a raft of affidavits that might be arguably inadmissible, and Fishhawk has not sufficiently done so here.

**b.**

Fishhawk also asks the court to strike the supervisors' affidavits on timeliness grounds, noting that the plaintiffs produced them after the close of discovery. *See* doc. 46 at 1-2. But Fishhawk identified the supervisors as individuals with potentially relevant information in its initial disclosures, *see* doc. 47-1 at 3-9, and

Fishhawk was free to depose them or otherwise collect evidence from them at any point during the discovery process.  Fishhawk instead moved for sanctions against the plaintiffs, who then turned to the supervisors in search of evidence rebutting Fishhawk's allegations of fraudulent and frivolous conduct.  *See* docs. 35, 44.  Given Fishhawk's accusations, the court is unsurprised that the plaintiffs worked quickly to marshal evidence supporting their claims.  And Fishhawk has cited no authority for the proposition that such after-discovery production of affidavits is *per se* impermissible in situations such as this one.[8]

### c.

Fishhawk's final argument for striking the supervisors' affidavits relates to the Alabama Rules of Professional Conduct.  Fishhawk claims that plaintiffs' counsel improperly contacted an opposing party's employees by speaking with and eliciting testimony from Fishhawk's former decision-makers.  *See* doc. 46 at 3-5.

Rule 4.2 provides that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."  Ala. Rules of Prof'l Conduct

---

[8] Indeed, in responding to summary judgment motions, such production of affidavits is not only proper but expected: "The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion. . . . The burden then shifts to the non-moving party to rebut that showing by *producing affidavits* or other relevant and admissible evidence beyond the pleadings."  *Jones*, 683 F.3d at 1292 (emphasis added) (internal citations omitted).

R. 4.2(a).   As the comment to Rule 4.2 explains, "[i]n the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization."  *Id*.  But, relevant here, "there is a strong argument that Rule 4.2 does not even apply to *former* employees at any level."  Ala. Disciplinary Comm'n, Ethics Op. RO-92-12 (1992) (emphasis added).   Accordingly, "contact with a former employee is ethically permissible, unless [1] the ex parte contact is intended to deal with privileged matter," such as the former employee's communication with corporate counsel about the pending litigation, or [2] the former employee is represented by counsel.  *Id*.

Under these guidelines, counsel's contact with Fishhawk's former supervisors did not violate ethics rules.  Kirksey, Stevenson, and Smith no longer worked for Fishhawk at the time counsel contacted them, *see* doc. 44-2 at 10, 13, 17, and Fishhawk does not contend that it currently represents these employees or that they are otherwise represented in this matter.  Nor does Fishhawk allege that plaintiffs' counsel solicited information from the former supervisors regarding any privileged conversations they had with Fishhawk's counsel about this case.  To no surprise, Fishhawk, apparently realizing the futility of its ethics-related argument, abandoned this contention in its reply brief.  *See generally* doc. 52.  The court will therefore not strike the affidavits on this ground.

**3.**

The court turns finally, and wearily, to Fishhawk's contention that Stone's affidavit is a sham.  At issue here is the affidavit from Samuel Stone that purports to clarify his previous deposition testimony Fishhawk called into question in its motion for sanctions.  *See* doc. 44-2 at 22-27.  Fishhawk claims that this affidavit "directly contradicts [] Stone's unequivocal testimony without explanation" and thus must be stricken from the record.  *See* docs. 46 at 5-8; 48 at 1-2.

**a.**

Under the "sham affidavit rule," "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction."  *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).  "The Eleventh Circuit has cautioned, however, that this [] rule should be applied 'sparingly because of the harsh effect it may have on a party's case.'"  *Phillips v. Tacala, LLC*, 883 F. Supp. 2d 1138, 1141 (N.D. Ala. 2012) (quoting *Nichols v. Volunteers of America, North Alabama, Inc.*, 470 F. App'x 757, 761 (11th Cir. 2012)).  In particular, courts "must be careful to distinguish 'between discrepancies which create transparent shams and discrepancies which create an issue of credibility or go to the weight of the evidence.'"  *Faulk v. Volunteers of America*, 444 F. App'x

316, 318 (11th Cir. 2011) (citing *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986)).  Put differently, "every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence . . . [and] [i]n light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition." *Tippens*, 805 F.2d at 954 (internal citations omitted).

**b.**

Applying this rule with the restraint counseled by the Eleventh Circuit, Fishhawk has failed to show that the disputed statements, other than those related to Stone's contention that he complained about Houk's use of racial slurs, create a "transparent sham" rather than mere issues of credibility.  For one, Fishhawk glaringly misrepresents both Stone's affidavit and his deposition testimony several times.  As an example, Fishhawk argues that paragraphs 18-20 of Stone's affidavit "contradict [Stone's] testimony which affirmed he did not claim Fishhawk retaliated against him."  Doc. 48 at 1.  In the cited deposition testimony, however, Stone does no such thing, instead merely agreeing with Fishhawk's counsel that his initial EEOC charge did not list retaliation as a cause of action.  *See* doc. 35-1 at 38. Fishhawk also contends that those same paragraphs of Stone's affidavit "contradicts (sic) Stone's admission that Stevenson, his African-American supervisor, recommended his termination."  Doc. 48 at 2.  Again, however, the cited affidavit

paragraphs do not actually conflict with Stone's deposition testimony; Stone acknowledged in his deposition that Stevenson recommended his termination, *see* doc. 35-1 at 38, and nowhere in his affidavit does Stone make any reference to which Fishhawk employees were responsible for his termination, *see* doc. 44-2 at 22-27. Standing alone, these misrepresentations of the evidence are sufficient for the court to reject Fishhawk's motion.

But even to the extent Fishhawk accurately characterizes Stone's testimony, the court is unpersuaded that any discrepancies between Stone's affidavit and his deposition testimony evince the duplicity and blatant impropriety contemplated by the sham affidavit rule. *See generally Tippens*, 805 F.2d 949. Accordingly, the motion to strike Stone's affidavit is due to be denied.[9]

### III.

The court turns now to the defendants' motions for summary judgment, docs. 32, 37. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant meets this initial burden of proof, the burden then shifts to the nonmoving party to establish a "genuine issue for

---

[9] Counsel have every right to, and should, advocate zealously for their clients. There is a difference between zealous advocacy, however, and being unnecessarily contentious and taking positions that lack merit. Here, Fishhawk's counsel crossed the 'zealous advocacy' line long ago, and counsel would have better served Fishhawk by not causing it to pay counsel for time spent filing this barrage of meritless motions.

trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986) (internal citation

omitted), i.e., "that a reasonable jury could return a verdict for the nonmoving party,"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As the Eleventh Circuit

recently explained:

> Summary judgment is not a time for fact-finding; that task is reserved
> for trial. Rather, on summary judgment, the district court must accept
> as fact all allegations the non-moving party makes, provided they are
> sufficiently supported by evidence of record. So when competing
> narratives emerge on key events, courts are not at liberty to pick which
> side they think is more credible.

*Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (internal citations

omitted).  Thus, "view[ing] all evidence and mak[ing] all reasonable inferences in

favor of the non-moving party[,] . . . if [the court determines that] a reasonable jury

could make more than one inference from the facts, and one of those permissible

inferences creates a genuine issue of material fact, a court cannot grant summary

judgment" and instead "must hold a trial to get to the bottom of the matter." *Id*.

(internal citation omitted).

## IV.

Samuel Stone alleges that Fishhawk violated Title VII by subjecting him to a

racially hostile work environment, treating him differently than non-minority

employees, and retaliating against him for complaining about racial harassment. *See*

doc. 16.  Fishhawk argues that Stone: (1) failed to establish a *prima facie* case of

discrimination or adequately rebut Fishhawk's legitimate, non-discriminatory basis

for firing him; (2) failed to establish a *prima facie* case of retaliation or show that Fishhawk's stated reasons for the discharge are pretextual; and (3) failed to plead a hostile work environment claim or, alternatively, cannot overcome Fishhawk's affirmative defenses.  *See* docs. 39, 52.[10,11]

## A.

Stone first alleges that Fishhawk discriminated against him on the basis of race by discharging him shortly after the alleged attack, noting specifically that Fishhawk continued to employ Houk, who purportedly instigated the altercation. *See* doc. 16 at 7, 11-12.

## 1.

To establish a *prima facie* case of race-based disparate treatment, a plaintiff must plead that: "(1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford*

---

[10] In their response, the plaintiffs object to several paragraphs of two affidavits that Fishhawk produced in support of its motion for summary judgment, contending that these statements fall outside the bounds of permissible evidence at the summary judgment stage. *See* doc. 49 at 29-31 (citing docs. 38-5, 38-6).  The court has not considered the listed affidavit paragraphs in ruling on Fishhawk's motion, and therefore will not reach the merits of the plaintiffs' objections.

[11] Additionally, and perhaps unsurprisingly, Fishhawk moves to strike the affidavit of Eric Artrip, counsel for the plaintiffs, which the plaintiffs filed in support of their response to Fishhawk's summary judgment motion. *See* doc. 53.  Fishhawk offers a flurry of objections to this affidavit, *see id.*, and the plaintiffs, in turn, move to file an amended affidavit to address at least one of these objections, *see* doc. 54.  Regardless, the court has not considered Artrip's affidavit in ruling on the instant motions, and both motions, docs. 53, 54, are therefore due to be denied as moot.

*v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (citing *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)).  As for the fourth prong, a plaintiff need not identify "nearly identical" comparators to meet this burden, but he must identify colleagues the employer treated differently despite being "similarly situated [to the plaintiff] in all material respects."  *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019).  In determining whether the plaintiff satisfies this prong, the court must consider factors such as whether the two employees: (1) "engaged in the same basic conduct (or misconduct);" (2) were "subject to the same employment policy, guideline, or rule;" (3) were "under the jurisdiction of the same supervisor;" and (4) share a similar employment or disciplinary history.  *Id*. at 1227-28

Fishhawk contests only the final element of Stone's *prima facie* case, arguing that Houk was not similarly situated to Stone and thus cannot serve as a valid comparator.  Doc. 39 at 16-19.  In support, Fishhawk points the court to Houk's testimony that he was a "lead driver," and contrasts this with Stone's testimony that he was a "[d]river."  Doc. 39 at 18 (citing docs. 38-1 at 13; 38-3 at 5).  Fishhawk also notes that Houk "had more years more (sic) experience at Fishhawk than Stone and additional duties," *id*., although it fails to identify the nature of those additional duties.  And in its reply, Fishhawk cursorily maintains that Houk is not a valid comparator because "Stone failed to show th[at] he and [] Houk engaged in the same

basic misconduct, were subject to the same rules, were under the jurisdiction of the same supervisor, and had the same employment/disciplinary history."  Doc. 52 at 9 (citing *Lewis*, 918 F.3d at 1227-28).

These contentions are unpersuasive.  Fishhawk offers no evidence to substantiate its claim that Houk and Stone were not subject to the same employment policies, and Fishhawk also does not point the court to any evidence that the two men had dissimilar employment or disciplinary histories.  Both Stone and Houk also testified that they reported to the same supervisors. *see* docs. 38-1 at 14; 38-3 at 11, 17, which bolsters Stone's claims that the two were similarly situated.  And, importantly, that an employee's title differs slightly from his proffered comparator does not render that comparator inapt.  *See Lathem v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999).

However, Stone focuses on the altercation to claim that he is similarly situated to Houk.  *See* doc. 49 at 21-22.  Certainly, if Fishhawk had used the altercation as the basis for the discharge, Stone would have a valid point.  Allegedly, however, Fishhawk discharged Stone because of his performance.  And Stone never addressed the performance issue and offered no evidence about Houk's performance.  Absent a showing that he and Houk had similar performance statistics, Stone's reliance on Houk as a comparator falls short, and his *prima facie* case fails.

Alternatively, even if the court finds that Stone has shown that Houk is valid comparator under the factors outlined in *Lewis*, his race claim still fails.

## 2.

If a plaintiff makes out his *prima facie* case, "the burden shifts to the [employer] to articulate a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221.  Should the employer carry this burden, the plaintiff, to avoid summary judgment, "must then demonstrate that the [employer's] proffered reason was merely a pretext for unlawful discrimination."  *Id*.  A plaintiff can meet this burden "by offering evidence that [the employer] more likely than not acted with a discriminatory motive, or by showing that its proffered reasons are not credible." *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010).

This is where Stone's discrimination claim definitively falters.  Fishhawk meets its burden: its president, Doug Anderson, avers that Fishhawk discharged Stone, in part, because Stone was performing well below the average Fishhawk employee.  *See* doc. 38-5 at 9-10.  In support of this contention, Anderson added that even though Fishhawk assigned Stone to a route adjacent to Fishhawk's delivery hub, Stone only averaged 75 daily deliveries.  *Id*.  Fishhawk expected its employees to deliver 120 packages per day, and Houk, in particular, delivered an average of 157 packages per day.  *Id*.  In fact, "[a]t the time of [] Stone's termination, [] Houk was averaging [29]% more stops and 65% more packages per day in comparison to

[] Stone." *Id*.  In addition to Stone's performance deficit, Anderson avers that "[t]here were multiple times after [the altercation] when [Stone] did not show up to work as scheduled and/or [] was tardy to work." *Id*.  Fishhawk has thus articulated a nondiscriminatory rationale for Stone's discharge, shifting the burden to Stone to show that these reasons are pretextual.

Stone has failed to make this showing.  He principally argues that each of Fishhawk's stated reasons "are disputed as false, a mere pretext for discrimination by Stone's former supervisors," and he points the court to Stone's former supervisors' affidavits in which they state that Stone's performance, in their view, did not warrant termination.  Doc. 49 at 22-23.  But to meet his burden, Stone must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Fishhawk's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns, Meadowcraft, Inc.*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal citation omitted).  And differences amongst supervisors' opinions about the adequacy of an employee's performance does not establish that discriminatory animus factored in the discharge or adequately challenge Fishhawk's contention that Stone's delivery rate significantly lagged behind other drivers'.  To survive summary judgment, Stone needs to instead show that his delivery statistics were in line with others or that white employees with lower delivery numbers were not discharged.  And on this

record, Stone has failed to sufficiently undermine Fishhawk's stated performance- and insubordination-based reasons for his discharge and has failed to show "that discrimination was the real reason" for Fishhawk's decision. *Brooks v. County Comm'n*, 446 F.3d 1160, 1163 (11th Cir. 2006). Summary judgment is therefore due on Stone's race discrimination claim.

## B.

Stone alleges also that, by discharging him, Fishhawk "retaliated against [Stone] in response to his complaints of assault [and] battery[] and his complaints of ongoing discriminatory and racially-harassing behavior by a co-worker." Doc. 16 at 11.

## 1.

Fishhawk argues, in part, that Stone failed to pursue his retaliation claim at the EEOC level. To file a Title VII claim in federal court, a plaintiff must first file a charge of discrimination with the EEOC. *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). "The purpose of the filing requirement is to [e]nsure that the settlement of grievances be first attempted through the office of the EEOC." *Wu v. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989) (internal citation omitted). Accordingly, a "plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th

Cir. 2000) (internal citation omitted).  Put differently, "judicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but [] allegations of new acts of discrimination are inappropriate." *Gregory*, 355 F.3d at 1279-80 (citing *Wu*, 863 F.2d at 1547).  Importantly, however, "the scope of an EEOC complaint should not be strictly interpreted," and courts should be "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII."  *Id.* at 1280 (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61, 465 (5th Cir. 1970)).[12]

As Fishhawk notes, Stone failed to check the "retaliation" box in his initial EEOC charge.  *See* doc. 1-1 at 2-3.  But this failure alone does not bar him from bringing a subsequent retaliation claim.  Stone alleged in his charge that just after he signed a warrant for Houk's arrest, Fishhawk's area manager "called [him] and told [him] that [he] needed to drop the charges against [] Houk or [he] would be fired." *Id.*  This language clearly alleges a retaliatory animus, and Stone's instant retaliation claim therefore does not "alleg[e] [] new acts of discrimination" but rather "clarif[ies] [] the allegations in the EEOC complaint."  *Gregory*, 355 F.3d at 1279-80.  The claim is thus properly before this court.

---

[12] Fifth Circuit decisions handed down prior to October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

**2.**

"A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford*, 529 F.3d at 970 (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001)). Protected activities include "oppos[ing] any practice made an unlawful employment practice by [Title VII], or . . . ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a).

Fishhawk contends that Stone did not engage in a protected activity, claiming that "[i]t is undisputed that [] Stone never complained to Fishhawk's managers about [] Houk's alleged use of racially offensive language until after he was terminated." Doc. 39 at 24-25 (emphasis omitted). In support, it cites the following deposition testimony:

> [Fishhawk's counsel:] Isn't it true, Mr. Stone, you never complained to Fishhawk about Mr. Houk being racist to you from September 2019 until you were terminated?
>
> [Stone:] Correct.

Doc. 38-1 at 29. Indeed, Stone is consistent on this point:

> [Fishhawk's counsel:] Yet you never complained to management about Houk's racist tendency at any point in your employment at Fishhawk, did you?
>
> [Stone:] No.
> . . .
> [Houk's counsel:] So let's be clear, the morning of the incident, which I understand to be September 12th, 2019, all you stated to [Stevenson] was that [Houk] was amped up and in a [rage]; is that correct?
>
> [Stone:] Right.

*Id*. at 31, 41.  Based on this testimony, Fishhawk maintains that "Stone never complained about race or engage[d] in any protected conduct."  Doc. 39 at 24-25.

Stone, in attempting to rebut this argument, directs the court to his post-motions affidavit.  Doc. 49 at 11, 24 (citing doc. 44-2 at 25).  In it, Stone claims that he "told [Stevenson] that [] Houk had used the 'n' word when attacking [him]," and he maintains that his contradictory deposition testimony was a result of his "confus[ion] by how [he] was asked about this."  Doc. 44-2 at 25.  But this averment is unpersuasive given Stone's unequivocal testimony in response to clear questioning about the content of his complaints to Fishhawk supervisors.  Stated differently, Stone's affidavit alone, when stacked against his sworn testimony, does not allow the reasonable inference that Stone in fact complained about Houk's alleged racial slurs to Fishhawk or its decision makers.

As noted previously, "a party cannot give clear answers to unambiguous questions in a deposition and thereafter raise an issue of material fact in a

contradictory affidavit that fails to explain the contradiction." *Rollins*, 833 F.2d at 1530 (internal citation omitted).  The discrepancy here between the affidavit and the deposition testimony is one which creates a transparent sham rather than one that goes to credibility or the weight of the evidence. *Faulk*, 444 F. App'x at 318.  Stone has thus failed to raise a genuine issue of material fact as to whether he engaged in a protected activity, and his retaliation claim fails.[13]  Moreover, even if Stone could make a *prima facie* case, the retaliation claim would still fail in light of Stone's failure to rebut Fishhawk's reasons for his discharge. *See supra* Section IV.A.2.

## C.

The court turns finally to Stone's hostile work environment claim.  To survive summary judgment on a race-based hostile work environment claim, a plaintiff must present evidence sufficient to allow a reasonable jury to find: "(1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on his race; (4) that the harassment was severe or pervasive enough to alter the terms and conditions of his employment and create a discriminatorily abusive working environment; and (5) that the

---

[13] To the extent Stone's retaliation claim relates to his filing of a charge of discrimination with the EEOC, Stone filed this charge after his termination. *See* docs. 1-1 at 2-3; 38-1 at 193. Fishhawk, then, necessarily could not have retaliated against Stone for this conduct.  Similarly, Stone passingly references his allegation that a supervisor told him to drop his charges against Houk as evidence of Fishhawk's retaliation.  But pursuing criminal assault charges against a coworker is not an activity protected by Title VII, and this allegation therefore cannot save Stone's retaliation claim.

employer is responsible for the environment under a theory of either vicarious or direct liability." *Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1248-49 (11th Cir. 2014) (internal citation omitted).

Given the Stones' testimony that Houk levelled racial slurs at Samuel Stone both before and during their altercation, *see* docs. 38-1 at 22, 57; 38-2 at 7, Fishhawk does not dispute that Stone satisfies the first three elements of his hostile work environment claim, *see* doc. 52 at 10.  Fishhawk also appears to concede that Houk's conduct satisfies the severe or pervasive prong of the analysis.  Fishhawk's only arguments in support of summary judgment on this claim are (1) that Stone failed to plead a hostile work environment claim, and (2) that Stone cannot meet the fifth element of his claim because he cannot surmount Fishhawk's *Faragher-Ellerth* affirmative defense to vicarious liability.  *Id*.

## 1.

Fishhawk's construction of Stone's complaint is unpersuasive.  Stone alleges that Houk subjected him to racial abuse and that Fishhawk then forced Stone to work alongside Houk despite this abuse.  *See* doc. 16 at 5-7.  Also, the Title VII portion of Stone's complaint includes a claim based on Fishhawk's "malice or reckless indifference" to Stone's "complaints made with respect to the assault and racial abuse directed towards him by a co-worker."  *Id*. at 11-12.  This phrasing, though perhaps inartful, states a hostile work environment claim.

**2.**

To avoid liability under the *Faragher-Ellerth* defense, the employer must show: "(a) that [it] exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). Notably, "the employer bears the burden of establishing both of these elements." *Baldwin v. Blue Cross/Blue Shield of Alabama*, 480 F.3d 1287, 1303 (11th Cir. 2007).

**a.**

To support its contention that it exercised reasonable care to prevent the alleged harassment, Fishhawk cites its anti-harassment policy and Stone's failure to complain of the alleged harassment. *See* doc. 52 at 10. To be sure, where an employer has established and promulgated an anti-harassment policy, a plaintiff's failure to utilize it dooms his hostile work environment case. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1301-02 (11th Cir. 2000). But the mere fact of this policy does not show that Fishhawk "exercised reasonable care to prevent and correct promptly any harassing behavior," *Miller*, 277 F.3d at 1278, and Fishhawk does not elaborate further or raise any other arguments on this point. Put simply,

Fishhawk's cursory references to the *Faragher-Ellerth* defense and its related asseverations are insufficient to carry its burden of establishing the defense's propriety.

### 3.

However, as outlined above, *see supra* Section III.B.2, Stone has failed to raise a genuine issue of material fact as to whether he complained to any of his supervisors about Houk's alleged use of racial slurs.   Thus, even viewing the evidence in a light most favorable to Stone, he has not shown that Fishhawk "knew or should have known" of the allegedly racially-abusive conduct.   *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1287 (11th Cir. 2018).   And an employer cannot be held vicariously or directly liable for an allegedly hostile work environment if the plaintiff failed to give notice of this environment and has not shown that the employer should have known about the alleged harassment even in the absence of a complaint.   *Id.* at 1287-88.   Therefore, this claim cannot survive.

* * * * *

In sum, summary judgment is due on the Title VII claims, and the court turns to the propriety of exercising supplemental jurisdiction over the remainder of the plaintiffs' state law claims.

## V.

Federal courts have supplemental jurisdiction over state-law claims where those claims "are so related to [federal] claims in the action [] that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Section 1367 provides further that "district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if [] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). However, because "state courts, not federal courts, should be the final arbiters of state law, . . . [where] a court has dismissed all federal claims from a case, there is a very strong argument for dismissal, especially where the federal claims are dismissed prior to trial." *Ingram v. Sch. Bd. of Miami-Dade Cnty.*, 167 F. App'x 107, 108 (11th Cir. 2006) (citing *Baggett*, 117 F.3d at 1353). In fact, such dismissal may even be mandatory: "if the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of state claims." *L.A. Draper & Son v. Wheelabrator–Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

In light of the dismissal of the Title VII claims, judicial economy and comity considerations weigh strongly against exercising supplemental jurisdiction over the remaining state-law claims.  To the extent the plaintiffs wish to maintain their tort claims against Houk and Fishhawk, they may do so in state court.[14]

## VI.

For the reasons stated above, summary judgment is due to be granted on Samuel Stone's Title VII claims, which are due to be dismissed with prejudice, and the court will dismiss the plaintiffs' state-law claims without prejudice with leave to refile in state court.  A separate order effectuating this opinion follows.

**DONE** the 14th day of June, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE

---

[14] As a result of this ruling, the court will not address the merits of Houk's motion for summary judgment, doc. 32, or Fishhawk's arguments related to the plaintiffs' state-law claims, doc. 39 at 28-33.